UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GEOVANNI CERRATO,

Plaintiff,

v.

Case No. 24-cv-12778
HON. MARK A. GOLDSMITH

CANTON POLICE DEPARTMENT, et al.,

Defendants.
______________________________/

**OPINION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT (Dkt. 38)**

Before the Court is Defendants Canton Police Department, Charter Township of Canton, Officer Robert Pasick, Sargeant Andrew Colthurst, Officer Nabile Syed, Officer Kenneth Robinson, Officer Darren Kossick, Officer Lisa Kish, Officer Corey Altheim, Officer Jared Peterson, and Officer Hannah Hart's amended motion for summary judgment. (Dkt. 38). Invoking the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, Plaintiff Michael Geovanni Cerrato alleges deliberate medical indifference and unconstitutional conditions of confinement claims in violation of 42 U.S.C. § 1983 related to his medical needs while in custody at the Canton jail. Am. Compl. ¶¶ 49–61 (Dkt. 28). Cerrato also brings state-law claims of gross negligence and intentional infliction of emotional distress as to all Defendants. Id. ¶¶ 62–76. Defendants seek summary judgment as to all the counts against them.[1] For the reasons that follow,

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing also includes Cerrato's response (Dkt. 40) and Defendants' reply (Dkt. 42).

the Court grants the motion by awarding Defendants summary judgment on the federal claims, but denies it as to the state-law claims, which are dismissed without prejudice.

## I. BACKGROUND

The following facts are not in dispute.

On October 22, 2021, Cerrato was arrested at the Sam's Club in Canton, Michigan after he was allegedly seen concealing several items inside a children's double stroller and walking past the checkout area without paying. Canton Police Rpt. at PageID.667–671 (Dkt. 38-2). He was stopped by Canton police officers who searched the stroller and found electronics totaling $827.88 hidden in it. Id. at PageID.670. He was arrested for first degree retail fraud and taken to the Canton jail. Id.

At the jail, as part of intake, he filled out a "medical screening form." Pasick Dep. at PageID.1320 (Dkt. 40-15); Kish Dep. at PageID.690–691 (Dkt. 38-4); Medical Screening Form at PageID.673 (Dkt. 38-3). On the form he disclosed that he was "diabetic/insulin dependent/pancreatitis (all diabetes related)." Medical Screening Form at PageID.673.

During his two-day stay in the jail, Cerrato was taken to the emergency room four times. Cerrato Dep. at PageID.873–876 (Dkt. 38-14); 10/22/21 Beaumont Canton Rpt. at PageID.778–780 (Dkt. 38-11); 10/23/21 Beaumont Canton Morning Rpt. at PageID.792–798 (Dkt. 38-11); 10/23/21 Beaumont Canton Afternoon Rpt. at PageID.781–791 (Dkt. 38-11); 10/24/21 St. Mary Mercy Rpt. at PageID.799–816 (Dkt. 38-11, 12). At the Canton jail, if a detainee needs medical attention, the jail calls the Canton Fire Department paramedics to determine whether the detainee needs to go to the hospital. Kossick Dep. at PageID.981–982 (Dkt. 38-16). If the paramedics determine the detainee needs to go to the hospital, the fire department transports the detainee there. Id. at PageID.982.

Each time Cerrato was transported to the hospital, he was diagnosed with hyperglycemia and treated with insulin. 10/22/21 Beaumont Canton Rpt. at PageID.778–780; 10/23/21 Beaumont Canton Morning Rpt. at PageID.792–798; 10/23/21 Beaumont Canton Afternoon Rpt. at PageID.781; 10/24/21 St. Mary Mercy Rpt. at PageID.799–800.

On October 24, 2021, Cerrato was released from the Canton jail pending charges. Prisoner Release Form at PageID.1313 (Dkt. 40-14).

On November 7, 2021, Cerrato went to the emergency room for a worsening right big toe infection. 11/7/21 IHA Hospital Records at PageID.1364 (Dkt. 40-18). His toe was drained and he was admitted so that the hospital could administer intravenous antibiotics. Id. at PageID.1386–1387; 1391–1392. He was discharged on November 12, 2021. Id. at PageID.1414–1421.

## II. ANALYSIS[2]

Defendants argue that they are entitled to summary judgment as to all claims against them. For the following reasons, the Court agrees as to the federal claims. The Court dismisses without prejudice the state-law claims because supplemental jurisdiction will be not exercised.

### A. Federal Claims

Cerrato brings claims alleging violations of the Fifth, Fourteenth, and Eighth Amendments to the United States Constitution, premised on deliberate indifference to his medical needs and subjecting him to unconstitutional conditions of confinement while in the Canton jail. Am. Compl.

[2] The Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

¶¶ 49–61.[3] The Court addresses each of the constitutional theories under which Cerrato brings his federal claims, in turn.

**1. Fifth Amendment**

Cerrato brings a claim under the Fifth Amendment against all Defendants. Am. Compl. ¶¶ 49–53. In response, Defendants contend that because they are "local/municipal actors[,]" the Fifth Amendment does not apply. Mot. at PageID.637. They are correct, and Cerrato does not dispute this. The Fifth Amendment due process clause applies only to claims against federal actors. Scott v. Clay Cnty., 205 F.3d 867, 873 n. 8 (6th Cir. 2000). None of the Defendants is a federal actor. Therefore, Cerrato's Fifth Amendment claim is dismissed.

**2. Eighth Amendment**

Cerrato brings an Eighth Amendment claim against all Defendants. Am. Compl. ¶¶ 54–61. This claim also fails because Cerrato was a pretrial detainee, not a convicted inmate. Ford v. Cnty. of Grand Traverse, 535 F.3d 483, 494–495 (6th Cir. 2008) ("The Eighth Amendment, by its terms, applies only to post-conviction inmates." (punctuation modified)). Cerrato's Eighth Amendment claim, Count II, is also dismissed.

**3. Fourteenth Amendment**

Cerrato's claim under the Due Process Clause of the Fourteenth Amendment requires a more detailed analysis. Pretrial detainees have a constitutional right "not to be 'deprive[d]' of their 'life' 'without due process of law.'" Lawler as next friend of Lawler v. Hardeman Cnty., 93 F.4th

[3] In Count I, Cerrato alleges that Defendants violated his Fifth and Fourteenth Amendment rights related to his medical needs and improper jail conditions. Am. Compl. ¶¶ 49–53. In Count II, Cerrato alleges that Defendants violated his Eighth Amendment right against cruel and unusual punishment related to his lack of medical care. Id. ¶¶ 54–61. In Count III, Cerrato brings a gross negligence claim as to the individual Defendants in violation of Mich. Comp. Laws § 691.1407. Id. ¶¶ 62–73. In Count IV, Cerrato brings a claim of intentional infliction of emotional distress as to all Defendants. Id. ¶¶ 74–76.

919, 926 (6th Cir. 2024) (quoting U.S. Const. amend. XIV § 1). Cerrato alleges that Defendants deprived him in two interrelated ways: they were deliberately indifferent to his medical needs and they subjected him to unconstitutional conditions of confinement. Am. Compl. ¶¶ 49–53; Resp. at PageID.1035–1046. The Court analyzes this claim separately for the individual Defendants and the municipal Defendants.

**a. Individual Defendants**

The individual Defendants argue that they are entitled to qualified immunity, offering two rationales: (i) Cerrato cannot establish that they were personally involved in the alleged constitutional violations, and (ii) no conduct alleged by Cerrato amounts to a constitutional violation. Mot. at PageID.637–642. The Court first addresses personal involvement and then considers whether there is evidence of any constitutional violations sufficient to warrant a trial.

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Phillips v. Roane Cnty., 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: (i) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and (ii) whether the right was clearly established at the time of the violation. Id. at PageID.538–539. The court may address these two prongs in either order. Pearson v. Callahan, 555 U.S. 223, 236 (2009). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006) (punctuation modified).

**i. Personal Involvement**

The liability of each defendant "must be assessed individually based on his [or her] own actions." Binay v. Bettendorf, 601 F.3d 640, 650 (6th Cir. 2010). That is because "damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." Lanman v. Hinson, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original).

Cerrato sues nine officers. Am. Compl. ¶¶ 8–16. Defendants argue that Cerrato has not identified "any specific defendants [who] personally made or enforced a constitutionally unreasonable denial or delay of care." Mot. at PageID.638–639.

Cerrato does not mention Colthurst, Syed, Robinson, and Altheim at all in his response brief, much less provide any evidence that they violated his constitutional rights. A party opposing summary judgment must come forward with evidence to support his claim or demonstrate that there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–249 (1986). Because Cerrato has not put forth any evidence related to his claims against Colthurst, Syed, Robinson, and Altheim, the Court grants summary judgment to them on Count I.

Cerrato does mention Kish, Kossick, Pasick, Peterson, and Hart in his response. See Resp. However, Cerrato's only mention of Kossick and Peterson is that they accompanied him on his hospital trips. Resp. at PageID.1029–1030. And Cerrato's only mention of Hart is to allege that she told him he should "sue the department for the way he was treated." Resp. at PageID.1059. Because Cerrato does not make arguments that Kossick, Peterson, or Hart personally undertook actions that allegedly violated his constitutional rights, the Court also grants summary judgment to them on Count I. Anderson, 477 U.S. at 248–249.

That leaves Pasick and Kish. Cerrato mentions Pasick once in the fact section of his brief. Citing his deposition testimony, Cerrato argues that he told Pasick, who arrested him, that "it was time for his evening dose of insulin" and that Pasick told him that "it would get taken care of at the station." Resp. at PageID.1028. Then in the argument section of his brief, he asserts, generally, that "Defendants refused to provide insulin…" Id. at PageID.1036.

A review of Cerrato's deposition transcript reveals that he did not actually identify Pasick as the person to whom he made that statement. Cerrato Dep. at PageID.866. When describing the interaction in his deposition, he stated:

> When I was in the cop car I said my insulin is due. It was due about 30 minutes ago and my sugar is going to spike, spike up so I need insulin. I was told we will deal with that when we get there to the station. When I got to the station, they said they didn't have insulin for me.

Id.

If this were the only evidence in the record, the Court would grant summary judgment to Pasick here as Cerrato has not actually argued that Cerrato violated his constitutional right by not getting him insulin. However, Pasick confirmed that he was present when Cerrato asserts he made statements about his need for insulin. Pasick testified that according to his report, he transported Cerrato to the police station after he was arrested. Pasick Dep. at PageID.1320. And that once they arrived at the station, according to his report, he "booked and processed" Cerrato along with Kish. Id. When asked about Cerrato's medical screening form, Pasick testified that he reviewed the form and that he, "remember[ed] he said something about diabetic neuropathy, if I'm saying that right, and miscellaneous diabetic issues that [he] put on the [m]edical [s]creening [f]orm." Id. Pasick did not mention, nor was he asked, whether Cerrato reported that he needed insulin or other medical attention during their interactions. However, viewing the facts in the light most favorable to Cerrato, given that Cerrato testified that he stated in the police car that his insulin was due and

that Pasick was in the police car, the Court finds that Cerrato has sufficiently alleged Pasick's personal involvement.

Cerrato also mentions Kish twice in his statement of facts related to his diabetic medical needs. Cerrato stated that he "indicated on both his [m]edical [s[]creening [f]orm, as well as to the intake officer, Lisa Kish, that he is diabetic and insulin dependent." Resp. at PageID.1028. He also asserted that he told Kish about his concerns about removing an extra pair of socks that he was wearing. Id. at PageID.1029. Again, his deposition testimony does not specifically state that he made any of these statements to Kish. See Cerrato Dep. at PageID.865, 889, 910, 914.

Once again, Cerrato did not actually argue in his brief that Kish violated his constitutional rights. Cerrato's claim is saved by Kish's deposition testimony. Kish testified that she did not independently remember Cerrato, but reviewed video footage from his booking. Kish Dep. at PageID.686. She stated that she "did not have much verbal interaction with him," and that she had him "sign his property folder;" she "believe[d she] might have escorted him to his cell." Id. at PageID.686–687. Again, viewing the facts in the light most favorable to Cerrato, the Court finds that Cerrato has sufficiently alleged Kish's personal involvement.

**ii. Constitutional Violations**

Despite finding that Cerrato has presented sufficient evidence that Pasick and Kish were personally involved in the alleged violations, the Court nonetheless finds that his claim fails because he has not established a triable issue that Pasick and Kish were deliberately indifferent to either his medical needs or subjected him to unconstitutional conditions of confinement under the Fourteenth Amendment.

Both claims require that Cerrato establish an objective and subjective component. The objective component requires Cerrato to demonstrate that the risk posed to him by the lack of

attention to his medical needs and conditions of confinement be objectively serious. Greene v. Crawford Cnty., 22 F.4th 593, 605 (6th Cir. 2022) (medical needs); Reedy v. West, 988 F.3d 907, 912 (6th Cir. 2021) (conditions of confinement). And under the subjective component, the plaintiff must show that the Defendants "acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Helphenstine v. Lewis Cnty., 60 F.4th 305, 317 (6th Cir. 2023) (citing Brawner v. Scott Cnty., 14 F.4th 585, 596 (6th Cir. 2021)).[4]

Pasick and Kish do not challenge the objective component. Nor could they reasonably make any such argument, as untreated diabetes has been found to be an objectively serious medical need. See Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005). Instead, Pasick and Kish argue that they are entitled to summary judgment because Cerrato cannot establish the subjective component in that (i) he went to the hospital four times for treatment over the course of two days, and (ii) the record does not support his assertions that they refused to allow him to wear his second pair of socks to protect his feet. Mot. at PageID.637–641. The Court agrees and addresses each argument in turn.

**Evidence Related to Untreated Diabetes**

Shortly after Cerrato shared that he needed insulin, he was taken to the hospital where he received insulin. 10/22/21 Incident Report at PageID.1264 (Dkt. 40-9); 10/22/21 Beaumont

[4] Recently, in Poynter by and through Fernandez v. Shirley, No. 25-5188, 2026 WL 2641092, *6 (6th Cir. Sept. 8, 2026), the Sixth Circuit returned to the subjective standard for deliberate indifference claims outlined in Farmer v. Brennan, 511 U.S. 825 (1994). However, the Sixth Circuit has stated that when evaluating qualified immunity claims, like the individual Defendants' claim here, courts "may consider only the legal rules existing when 'the challenged conduct' occurred, not legal rules adopted by later caselaw." Lawler as next friend of Lawler v. Hardeman Cnty., 93 F.4th 919, 926 (6th Cir. 2024). Cerrato's alleged violations took place in October 2021 when the subjective standard outlined in Brawner applied. So the Court applies the subjective standard as described in Brawner.

Canton Records at PageID.778–779. The record is unclear about when exactly Cerrato was transported to or arrived at the Canton jail, and thus when exactly Cerrato told Pasick and Kish that he needed insulin.

The report documenting Cerrato's arrest stated that his alleged theft from the Sam's Club occurred at 16:49. Canton Police Case Rpt. at PageID.667. However, there is no evidence as to the time when the police appeared at the scene. Cerrato had to have been transported to the Canton jail sometime after the time of the incident (i.e.,16:49), but that exact time is unknown. The next time indicator in the record is a Canton Township Fire Department's incident report, which states that the jail called requesting assistance for Cerrato at 18:36. 10/22/21 Incident Report at PageID.1264. Thus, the time lapse between the onset of police custody and the summoning of medical help was under 107 minutes (from 16:49 to 18:36). This maximum timeframe—which Cerrato fails to make more precise—hardly shows that Pasick and Kisch "acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Helphenstine, 60 F.4th at 317. Thus, Cerrato fails to establish a triable issue regarding deprivation of insulin against Pasick and Kisch.

Nor does he establish a triable issue regarding the remainder of his stay at the jail. As to this latter period, Cerrato does not identify to whom he stated that he needed insulin, but he acknowledges that he was taken to the hospital three more times during his approximately 44-hour stay. Cerrato Dep. at PageID.873.[5] The record shows that the Canton Fire Department next was

[5] The record is unclear as to precisely how long Cerrato was in custody at the Canton jail. The case report documenting his arrest states that "the incident" occurred on October 22, 2021, at 16:49. Canton Police Case Rpt. at PageID.667. Cerrato was released on October 24, 2021, at "12:32." Prisoner Release Form at PageID.1313. Based on these records, Cerrato would have been in the custody of the Canton police for approximately 44 hours, at most, which accords with Cerrato's view that he was in custody for approximately 42 hours. Resp. at PageID.1039.

called to the jail for Cerrato on October 23, 2021, at 8:42 a.m. 10/23/21 Morning Incident Rpt. at PageID.1269 (Dkt. 40-9). The Canton Fire Department took him to Beaumont Canton again where he received insulin. 10/23/21 Beaumont Canton Morning Rpt. at PageID.792–798. The Canton Fire Department responded again to the jail in the afternoon of October 23, 2021, at 16:37 where they again took Cerrato to Beaumont Canton for insulin. 10/23/21 Afternoon Incident Rpt. at PageID.1273 (Dkt. 40-9); 10/23/21 Beaumont Canton Afternoon Rpt. at PageID.781–791. The next morning, on October 24, 2021, Cerrato was taken to St. Mary Mercy in Livonia, Michigan and was again given insulin. 10/24/21 St. Mary Mercy Rpt. at PageID.799–816.

These four trips to the hospital for insulin over a 44-hour period do not show that any of the Defendants were deliberately indifferent to Cerrato's medical needs. To the contrary, the hospital visits show that Defendants were attentive to Cerrato's need for insulin by arranging for his transport to receive that medication at regular intervals.

Without targeting any particular Defendant, Cerrato broadly argues that "Defendants failed to provide prompt or appropriate care," and that they allowed his "condition to deteriorate into a medical crisis, delayed intervention until emergency services were required, and transported [him] to and from the hospital without addressing the underlying need for insulin." Resp. at PageID.1043.

As stated above, allegations that do not specifically identify which Defendants violated his constitutional rights are insufficient to withstand summary judgment. Reilly, 680 F.3d at 626. Even if Cerrato had properly identified which individual Defendant he alleges failed to provide prompt care, the record does not support Cerrato's arguments of medical indifference or unconstitutional conditions of confinement.

Kossick testified that when a detainee at the Canton jail needs medical attention, the procedure is to call paramedics to evaluate the detainee. Kossick Dep. at PageID.981–982. And then, if the paramedics determine the detainee needs to go to the hospital, the fire department takes the detainee there. Id. at PageID.982. Just because "emergency" personnel were called to the jail does not imply that there was a "crisis"—the involvement of emergency personnel is the jail's normal procedure. Further, Cerrato provides no citation to the record, nor can the Court find one, that supports his assertion that Defendants allowed his condition to deteriorate into a crisis. Cerrato provides no medical expert opinion that states he was in a crisis, or that the time it took to address his insulin needs was too long. The fact that he was transported to the hospital to be given insulin, and not given the insulin at the jail, does not amount to deliberate indifference.

Contrary to Cerrato's assertion that the jail failed to address his "underlying need for insulin," Resp. as PageID.1043, it in fact did attempt to meet that need. Cerrato admitted that when he first arrived at the jail and explained that he had diabetes, he was asked (unclear by whom) whether there was someone who could come bring him insulin. Cerrato Dep. at PageID.866–867 (stating that "[w]hen I got there, I was told is there anybody that could bring the insulin for you as we don't have that here for you. I said no.").

Because Defendants did try to accommodate Cerrato's ongoing need for insulin, there is no viability to a theory based on a failure to do just that.

**Evidence Related to Footwear**

Cerrato also argues that the individual Defendants were deliberately indifferent because he "expressed concern regarding the safety of his feet" at booking and that Defendants "disregarded [this] concern and required him to remain without proper footcare." Id. at PageID.1040. He also argues that during his multiple trips to the hospital, he was "forced to walk from his cell, outside

in the elements, and into the hospital wearing only" his single pair of socks. Id. at PageID.1031. He says that, for a diabetic, wearing a single pair of socks outside could cause a serious risk of "infection, injury, and permanent damage" to his foot. Id. at PageID.1033. He testified that his socks were wet when he came back from the hospital and that he did not receive any help to relieve that wetness. Cerrato Dep. at PageID.919.[6]

It is unclear whether Cerrato's allegations related to this event are a claim for deliberate indifference to medical needs, for conditions of confinement, or both. Regardless of what claim he is attempting to bring, this event does not amount to a constitutional violation because he does not identify who allegedly violated his constitutional right so he cannot meet the required subjective component of the deliberate indifference test.

Cerrato's testimony about what exactly he said about his feet during booking are sparse. Cerrato testified only, "I was told by every staff member there I couldn't have my extra pair of socks on my shoes or my shoes." Cerrato Dep. at PageID.865. Further, he does not state that he told any staff members that he needed to keep his extra pair of socks and or shoes in order to manage his diabetes.

As stated previously, this general allegation is insufficient to demonstrate that any individual Defendant violated Cerrato's constitutional right. Reilly, 680 F.3d at 626. And Cerrato's failure to tie his need for additional footwear to his medical need is also fatal to his claim.

[6] As stated previously, Cerrato stated that Kossick and Peterson accompanied him on his hospital trips. Resp. at PageID.1029–1030. He makes no arguments beyond this statement. Since courts need not construct arguments that litigants have failed to make, the Court will not do so here. See ECIMOS, LLC v. Nortek Glob. HVAC, LLC, 736 F. App'x 577, 583–584 (6th Cir. 2019) ("[T]his court has consistently declined to review issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (punctuation modified).

Kish testified that she did not remember Cerrato saying anything about needing an extra pair of socks. Kish Dep. at PageID.696. She also testified that had Cerrato stated that he needed to keep on his second pair of socks for a medical reason, the jail would have made an accommodation. Id. at PageID.695. The jail would not have made an accommodation if Cerrato had requested to keep his extra pair of socks on without explaining that he needed the extra pair for a medical reason. Id. Cerrato's testimony fails to show that he made a medical request for extra socks that was denied. Thus, Cerrato has failed to show that any of the individual Defendants knew of his serious harm and disregarded it.[7]

The individual Defendants are entitled to summary judgment as to Cerrato's Fourteenth Amendment claim (Count I).[8]

---

[7] Cerrato also argues that shortly after his release, he was hospitalized with a "severe foot infection" and his doctor recommended that his big toe be amputated. Resp. at PageID.1045. He argues that this demonstrates the "seriousness and the foreseeability of the harm Defendants disregarded." Id. There is a serious defect in Cerrato's argument: he has an admittedly a long history of issues with his right big toe that predate his time spent in Defendants' custody. Mot. at PageID.641–642; Cerrato Dep. at PageID.876 (Q: "Isn't it true you've had a history with that foot for 13 years?" A: "13 years up until now, like, today's date?" Q: "Yes." A: "Yes." Q: So it didn't start in Canton?" A: "No."). The record contains Cerrato's medical records from before he was in Defendants' custody, which detail his mismanagement of his diabetes and issues with his right big toe. See 2/18/18 St. Joseph's Hospital Records at PageID.760–770 (Dkt. 38-7) ("The patient presents with right, toe pain, toe swelling, Right great toe pain swelling and infection ×2 weeks."); 5/8/19 St. Anthony's Hospital Records at PageID.718–759 (Dkt. 38-6) ("This is a 32-year-old gentleman who comes in the emergency room with increasing pain and swelling to his right great toe over the last 3 days."). This extensive medical history significantly undercuts his contention that his time in Defendants' custody caused his hospitalization for his big toe issue a few weeks later. However, given that summary judgment is awarded for other reasons, the Court need not address Cerrato's causation argument.

[8] In the statement of facts section of his brief, Cerrato states that he testified that he requested "diabetic-appropriate" meal options while in the Canton jail but was told that they were not available. Resp. at PageID.1030–1031. He states that "[t]his account is corroborated by Plaintiff's medical records, which note that while in 'police custody for the last two days,' Plaintiff reported he had been consuming only 'sugary' items at the jail and had been unable to control his diet." Id. at PageID.1031. However, Cerrato makes no argument beyond these statements in the fact section

**b. Municipal Defendants**

The municipal Defendants argue that they cannot be held liable because there was no underlying constitutional violation. Mot. at PageID.645. The Court agrees. "There can be no [municipal] liability under Monell without an underlying constitutional violation." Robertson v. Lucas, 753 F.3d 606, 622 (6th Cir. 2014). Therefore, the Court grants summary judgment to the municipal Defendants as to Count I.

**B. State-Law Claims (Counts III, IV)**

In addition to his federal claims, Cerrato brings gross negligence and intentional infliction of emotional distress claims under Michigan law as to all Defendants. Because the Court grants Defendants' motion for summary judgment as to Cerrato's federal claims, the Court declines to exercise supplemental jurisdiction over the state-law claims and dismisses them without prejudice. 28 U.S.C. § 1367(c)(2); Brooks v. Rothe, 577 F.3d 701, 709 (6th Cir. 2009) ("If the federal claims are dismissed before trial, the state claims generally should be dismissed as well.").

## III. CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion for summary judgment as to the federal claims, but denies it as to the state-law claims, which are dismissed without prejudice. The case is now closed.

**SO ORDERED.**

Dated: September 29, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

of his brief. The Court need not construct arguments that litigants fail to make. See ECIMOS, LLC, 736 F. App'x at 583–584.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager